**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

CHARLES HOUSER,
   Appellant,

  v.

DEPARTMENT OF HOMELAND
 SECURITY,
   Agency.

DOCKET NUMBER
NY-0752-14-0224-I-2

DATE: February 19, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Charles Houser</u>, Charles Town, West Virginia, pro se.

<u>Amy N. Baines</u>, Esquire, and <u>Mili Smith</u>, Esquire, Chicago, Illinois, for the
 agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1  The appellant has filed a petition for review of the initial decision, which dismissed his appeal for lack of jurisdiction. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 Effective June 2, 2012, the appellant took a disability retirement from his GS-12 Field Analysis Specialist position. *Houser v. Department of Homeland Security*, MSPB Docket No. NY-0752-14-0224-I-1, Initial Appeal File (IAF), Tab 23 at 66-67.[2] He subsequently filed an appeal with the Board alleging that his disability retirement was involuntary because the agency failed to accommodate him and that the agency discriminated against him based on his disability and retaliated against him for his equal employment opportunity (EEO) and whistleblowing activity. IAF, Tabs 1, 13, 15, 17, 20. He requested a hearing. IAF, Tab 1 at 2.

¶3 Following a 3-day hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. *Houser v. Department of Homeland Security*, MSPB Docket No. NY-0752-14-0224-I-2, Appeal File, Tab 14, Initial Decision (ID). She found that the appellant failed to establish by preponderant evidence that there was a reasonable accommodation available between the date he notified the agency of his need for an accommodation and the

___

[2] In his disability retirement application, he listed his medical conditions as "acute episodic allergies," left shoulder and left knee injuries, as well as insomnia and anxiety disorder.

date of his separation, which would have enabled him to continue working and which the agency unjustifiably failed to offer. ID at 7-14. She also found that the appellant could not establish that he retired involuntarily, given that he chose to retire prior to the completion of the reasonable accommodation process. ID at 13. She considered the appellant's disability discrimination and EEO reprisal claims, only insofar as they related to the issue of voluntariness, and found that the appellant failed to show his retirement was involuntary as to his allegations of discrimination and reprisal.[3] ID at 13-14. She explained that, in light of her jurisdictional finding, she could not consider these claims as affirmative defenses. ID at 13, 14 n.6.

¶4    The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. He disputes the administrative judge's findings concerning the availability of a reasonable accommodation, and the agency's efforts to accommodate him, prior to his retirement. *Id.* He claims that she made an erroneous finding of material fact as to the date he submitted his reasonable accommodation request. *Id.* at 4-5. He also challenges several of her rulings, arguing that she improperly: (1) denied his request for her "to recuse herself due to her biased and unprofessional misconduct"; (2) prevented his attempts at the hearing to impeach his supervisor's credibility; and (3) denied one of his witness requests.[4] *Id.* at 4, 6-7. The agency filed a response in opposition to the petition for review, to which the appellant replied. PFR File, Tabs 5-6.

---

[3] The appellant withdrew his whistleblower reprisal claim, so the administrative judge did not consider it further. ID at 13 n.5; July 28, 2015 Hearing Compact Disc (HCD2).

[4] The appellant also states that all of his Office of Workers' Compensation Programs (OWCP) claims initially were denied "due to the lack of candor by the agency to the OWCP examiner." PFR File, Tab 1 at 5. It is unclear whether he is making any argument concerning this allegation. However, to the extent he may be, we note that the Board lacks jurisdiction to review OWCP's decisions to pay or deny benefits. *Kerrigan v. Department of Labor*, 122 M.S.P.R. 545, ¶¶ 9-10 (2015).

<u>The appellant did not establish by preponderant evidence that his disability retirement was involuntary.</u>

¶5        In 2010, the appellant was employed with the agency as a Customs and Border Protection (CBP) Officer at an airport in Edmonton, Canada.  IAF, Tab 25 at 34, 77.  In November 2010, he requested reassignment to a nonairport work environment.[5]  *Id.* at 81.  Medical documentation he submitted with the request indicated that he suffers from medical conditions triggered by exposure to certain environmental irritants and that he should not be considered fit for duty in locations that trigger his symptoms.[6]  *Id.* at 82-83.

¶6        In March 2011, the appellant requested to be reassigned to a specific non-CBP Officer position.  *Id.* at 41.  In April 2011, the agency notified the appellant that it would conduct a local job search to identify a position to which he could be reassigned.  *Id.* at 33-36.  In October 2011, he accepted the agency's offer to reassign him to a GS-12 Field Analysis Specialist position in Champlain,

---

[5] The administrative judge stated in the initial decision that the appellant submitted this accommodation request on or about November 19, 2010.  ID at 3.  However, she later stated that the request was submitted on or about November 17, 2010.  ID at 7.  On review, the appellant states that he submitted the request on November 17, 2010, and that the administrative judge erred in finding otherwise.  PFR File, Tab 1 at 4-5.  We discern no error because the record contains conflicting information regarding the date the request was submitted.  IAF, Tab 25 at 33, 77, 81.  Further, although the appellant argues that this alleged error is material, PFR File, Tab 1 at 4-5, we find that it is not, *see* 5 C.F.R. § 1201.115(a)(1) (any factual error alleged on review must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision).

[6] The appellant argues that the administrative judge and the agency improperly questioned him regarding his medical condition, although they should have relied upon his medical documentation, and then used his lack of legal and medical knowledge against him.  PFR File, Tab 1 at 6.  The appellant does not identify the specific questions he finds objectionable, but we note generally that his medical condition is relevant to the issue in this appeal and, thus, it is not improper for him to be asked about it.  Moreover, he does not specify how any such testimony was improperly used against him and why that would warrant a different outcome in this appeal.  Thus, this argument does not establish a basis for review.  *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

New York. IAF, Tab 24 at 192-93. He began working in Champlain in early December 2011. *Id.* at 172.

¶7 On December 15, 2011, the appellant asked for additional accommodations relative to his work area in Champlain. *Id.* at 166-67. In January 2012, the appellant requested a temporary assignment at the National Targeting Center-Cargo (NTC-C), and also stated that there were permanent vacancies there.[7] *Id.* at 76-83. He also requested to relocate his work area to the second floor at Champlain, where he had purportedly spent 3 hours without experiencing allergic symptoms. *Id.* at 88, 168. In February 2012, the agency suggested various options to temporarily accommodate the appellant in his work area in Champlain. *Id.* at 88-89.

¶8 On May 9, 2012, the appellant received a letter from the agency, which: (1) indicated that the agency could not accommodate him at Champlain; and (2) requested that he provide updated information regarding his education and work history so that it could search within the local commuting area for a vacant, funded position within his medical restrictions for which he was qualified. IAF, Tab 23 at 92-95. By letter dated May 18, 2012, the appellant submitted the requested information, but also informed the agency that he had purchased a home in West Virginia, which would become his primary residence on or about June 1, 2012. *Id.* at 77. He requested that the agency conduct its job search within that local commuting area, various parts of Virginia, and the Washington, D.C. area. *Id.* He also stated that there were vacant, funded GS-12 positions available at the NTC-C, but did not identify the specific positions he believed were available. *Id.* The agency began its job search within the local commuting area of Champlain on May 30, 2012, but stopped the search when the appellant's disability retirement became effective on June 2, 2012. *Id.* at 69, 71-72.

---

[7] The NTC-C is located in Herndon, Virginia. *See* IAF, Tab 24 at 23.

¶9    To establish Board jurisdiction, an appellant who alleges that his disability retirement was involuntary must prove by preponderant evidence that: (1) he indicated to the agency that he wished to continue working but that his medical limitations required a modification of his work conditions or duties, i.e., accommodation; (2) there was a reasonable accommodation available between the date on which he indicated to the agency that he had medical limitations but desired to continue working and the date that he was separated, that would have allowed him to continue working; and (3) the agency unjustifiably failed to offer that accommodation.[8]  *SanSoucie v. Department of Agriculture*, 116 M.S.P.R. 149, ¶¶ 14-15 (2011).

¶10    The appellant argues that, contrary to the administrative judge's determination, he established that there were several available accommodations that the agency unjustifiably failed to offer him, including: (1) relocation to an outlying building in Edmonton; (2) relocation to the second floor in Champlain; (3) reassignment to an open temporary position in Herndon; and (4) placement into a GS-12 Mission Support Specialist position in Harpers Ferry, West Virginia.[9]  PFR File, Tab 1 at 6-8.

---

[8]  While this standard is correct to determine the Board's jurisdiction in most involuntary disability retirement appeals, in unusual circumstances, the Board applies its regular principles for determining jurisdiction over alleged involuntary retirements to assess the voluntariness of a disability retirement.  *Vaughan v. Department of Agriculture*, 116 M.S.P.R 493, ¶ 13 (2011).  Specifically, in an involuntary disability retirement appeal, an appellant may show that an agency coerced him into retirement by engaging in discriminatory conduct which caused or exacerbated the medical conditions underlying his disability retirement, such that he was unable to continue working.  *See id.*, ¶¶ 9, 14.  On review, the appellant states that the agency improperly delayed in accommodating him, which caused him to "become sicker" and develop "collateral and more serious medical and physical disabilities."  PFR File, Tab 1 at 5-6, 8.  However, he does not appear to be claiming that this alleged deterioration of his health rendered him incapable of working.  Indeed, as discussed below, just 2 days before he retired, he sought placement into a position in a location where he believed he would be asymptomatic and, thus, able to work.  *Id.* at 8.

[9]  The appellant also alleges that the agency unreasonably delayed in accommodating him and ultimately never provided him with an effective accommodation.  PFR File,

¶11     The administrative judge rejected the appellant's argument that the agency could have allowed him to work at one of the buildings outlying the Edmonton airport, noting that the appellant:  (1) conceded that the agency did not own these buildings; and (2) did not dispute the Edmonton Port Director's testimony that the agency did not own the buildings and had no authority to place employees there. ID at 8.  On review, the appellant argues that it is irrelevant whether the agency owned the buildings because it did not own any property at the Edmonton airport. PFR File, Tab 1 at 6.  As the administrative judge noted in the initial decision, however, the Edmonton Port Director testified that the appellant could not have performed his duties outside of the Edmonton airport because the preclearance agreement between Canada and the United States specifically outlines the areas where the agency has authority, privileges and immunities to perform CBP duties and the building to which the appellant is referring falls outside the scope of that agreement.  July 28, 2015 Hearing Compact Disc (HCD2) (testimony of Edmonton Port Director); ID at 8 n.4.  The appellant has not disputed this testimony on review.  Accordingly, we discern no error by the administrative judge.

¶12     The appellant argues that the agency should have granted his December 2011 request to relocate his office from the first floor to the second floor at Champlain.  PFR File, Tab 1 at 7.  We find that the administrative judge properly rejected this argument because the appellant failed to establish that this accommodation would have been effective.[10]  ID at 12.  An agency need not

Tab 1 at 5-6, 8.  He further claims that, at the hearing, agency management officials were unable to explain the reasonable accommodation process. *Id.* at 6.  We find these arguments immaterial because the appellant has not proven by preponderant evidence that there was an effective accommodation available that the agency unjustifiably failed to offer.

[10] The administrative judge also found that relocation was not possible based in part on an agency employee's testimony that the second floor was overcrowded and could not accommodate an additional workspace for the appellant. ID at 10-11.  The appellant argues on review that the administrative judge misconstrued the aforementioned

reassign an employee to a position that is not within his restrictions. *Okleson v. U.S. Postal Service*, 90 M.S.P.R. 415, ¶ 12 (2001), *modified on other grounds by Vaughan v. Department of Agriculture*, 116 M.S.P.R. 493, ¶¶ 12-13. All office areas on the second floor were carpeted. July 29, 2015 Hearing Compact Disc (HCD3) (testimony of Champlain Assistant Port Director). The record contains medical notes from several different medical providers recommending that the appellant not work in carpeted areas, as doing so could trigger his allergies. *See, e.g.*, IAF, Tab 25 at 64-65 (indicating that the appellant's "symptoms are due to exposure to airport-caused fumes, dust, as well as indoor allergens, such as carpeted areas" and recommending that the appellant have "minimal or no exposure" to these allergens), 82-83 (indicating the appellant attributed his symptoms to "exposure to jet fumes and possibly moldy carpeting" and stated that his "symptoms improved in environments with tile floors"), Tab 89, Exhibit (Ex.) A2 (indicating that the appellant's medical condition "precludes him from certain environmental situations," usually including "carpeted buildings"), Ex. A4a (indicating that the appellant is "likely sensitive to . . . debris caught in carpeting" and that he did not have allergic reactions when working in an environment with tile flooring), Ex. A11 (stating that the appellant's "allergies are worsened by indoor allergens i.e. fumes, poorly maintained carpeted areas, dust and poorly ventilated areas"). Further, in addition to carpeting, the second floor contained several paper shredders. HCD3 (testimony of Champlain Assistant Port Director). The appellant had alleged at Edmonton that shredding documents exacerbated his symptoms and requested to be excused from that task. HCD2 (testimony of Edmonton Port Director). Accordingly, we find that the agency was under no obligation to relocate the appellant's office to the second

---

testimony. PFR File, Tab 1 at 7. We find this issue immaterial because, regardless of whether there was space available for the appellant to relocate to the second floor, he has not shown that such relocation would have been an effective accommodation. *See* 5 C.F.R. § 1201.115(a)(1).

floor, which was outside of his medical restrictions.[11] *See Okleson*, [90 M.S.P.R. 415](), ¶ 12.

¶13      In addition, the appellant's assertion that the agency could have reassigned him to a temporary position in Herndon does not establish Board jurisdiction.[12] An appellant cannot satisfy his burden of establishing the existence of a reasonable accommodation that would have enabled him to continue performing his duties by showing that a temporary position was available. *See Mengine v. U.S. Postal Service*, [82 M.S.P.R. 123](), ¶¶ 8-12 (1999); *cf. Gometz v. Office of Personnel Management*, [69 M.S.P.R. 115](), 123 (1995) (finding the appellant qualified for disability retirement because the agency was unable to accommodate her beyond temporary accommodations, which is not a sufficient accommodation of a disability).

¶14      As to the Mission Support Specialist position, for which the appellant applied online, he received notification from the Office of Personnel Management shortly before noon on May 31, 2012, that he was found qualified for it. IAF, Tab 89, Ex. B2q. He contends that he notified the agency on that same day that he was qualified for this position and could be appointed to it under a special hiring authority for disabled individuals. PFR File, Tab 1 at 8. Assuming arguendo that the agency had the authority to appoint the appellant to this position, we decline to find that it unjustifiably failed to do so, given that his

---

[11] We find the appellant's assertions that the second floor was a "cleaner environment," that he previously had been asymptomatic after spending a few hours there, and that not all carpeting triggers his symptoms, insufficient to outweigh the substantial medical evidence he submitted clearly recommending against him working in carpeted areas. July 27, 2015 Hearing Compact Disc (testimony of the appellant); IAF, Tab 24 at 168.

[12] For this reason, we discern no error in the administrative judge's denial of the appellant's request for a witness to testify regarding this position. *See Vaughn v. Department of the Treasury*, [119 M.S.P.R. 605](), ¶ 13 (2013) (declining to find that an administrative judge abused his discretion in denying witnesses in the absence of a showing that their testimony would have been relevant, material, and nonrepetitious); PFR File, Tab 1 at 7.

retirement became effective less than 2 business days after he first identified this potential option.[13]

¶15    We also agree with the administrative judge that the appellant failed to await the outcome of the reasonable accommodation process and, therefore, cannot establish that he retired involuntarily. ID at 13; *see Collins v. U.S. Postal Service*, 100 M.S.P.R. 332, ¶ 11 (2005) (explaining that both the employee and the agency have an obligation to assist in the search for an appropriate accommodation and to act in good faith in doing so). The appellant acknowledges that the agency informed him, on or about May 20, 2012, of its intention to conduct a new job search. PFR File, Tab 1 at 8. He apparently surmised, based on the agency's previous alleged delay in providing him with an accommodation, that the agency would not perform this search promptly and that he would have to take "months of unpaid leave" in the meantime because he had exhausted all of his earned leave. *Id.* He thus chose to retire just 2 weeks later to ensure that he would continue to receive some income. *Id.* at 8. The appellant's speculation about the length of time it would take the agency to identify a position to which he could be reassigned did not relieve him of the obligation to cooperate in the interactive process.[14] *See Collins*, 100 M.S.P.R. 332, ¶ 11 (finding that the appellant's disability retirement was not involuntary because, inter alia, he failed to act on the agency's suggestion to apply for positions for which he was physically qualified and his alleged reasonable belief that he would not be selected did not relieve him of the obligation to participate in the interactive process).

---

[13] The appellant argues that the administrative judge erred in accepting as true an agency witness's testimony that he did not recall the appellant notifying him of this position. PFR File, Tab 1 at 8. We discern no error and, in any event, this issue is immaterial.

[14] We find the appellant's claim that the agency did not allow him to participate in the interactive process to be without merit. PFR File, Tab 1 at 5. The record is replete with evidence of the agency communicating with the appellant regarding his accommodation needs. *See generally* IAF, Tabs 23-26.

The appellant has not proven his claim of bias.

¶16    Below, the appellant filed a motion requesting that the administrative judge recuse herself because he believed that her actions evidenced favoritism and antagonism that would make a fair judgment impossible.  IAF, Tab 66 at 3.  The administrative judge denied the motion.  IAF, Tab 74 at 1-3.  On review, the appellant appears to argue the administrative judge erred in denying the motion and states that the initial decision constitutes "further evidence of misconduct." PFR File, Tab 1 at 4.

¶17    We discern no error in the administrative judge's decision to deny the appellant's motion for recusal.  In his two-sentence motion, the appellant made a bare assertion that the administrative judge's comments and rulings evidenced bias, but did not cite to any specific motions or rulings in support of that claim. IAF, Tab 66 at 3.  He also noted that the administrative judge denied his request for a status conference, but provided no explanation as to why that ruling constituted evidence of bias.  *Id.*

¶18    The aforementioned claims, which the appellant failed to support with any evidence, are wholly insufficient to overcome the presumption of honesty and integrity that accompanies administrative adjudicators.  *See Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980).  An administrative judge's case-related rulings, even if erroneous, are insufficient to establish bias sufficient to warrant her recusal or disqualification.  *Diefenderfer v. Department of Transportation*, 108 M.S.P.R. 651, ¶ 29 n.7 (2008).  Further, an administrative judge's remarks that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias claim.  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Rather, a new adjudication is warranted only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002)  (quoting *Liteky*, 510 U.S. at 555).  Accordingly, we agree with the administrative judge's

determination that the appellant did not allege facts sufficient to warrant a finding of bias or prejudice. IAF, Tab 74 at 1-3. We also reject the appellant's claim on review that the initial decision constitutes further evidence of bias. He has provided no explanation for that assertion and the mere fact that the administrative judge did not find in his favor does not establish bias. *See Diefenderfer*, 108 M.S.P.R. 651, ¶ 29 n.7.

**The appellant has shown no error in the administrative judge's rulings at the hearing.**

¶19 The appellant alleges that his supervisor committed perjury while testifying at the hearing and the administrative judge erred in preventing him from impeaching the witness and stated that his credibility was not relevant. PFR File, Tab 1 at 6. The appellant neither identifies the specific testimony that he believes was false, nor explains how the outcome in this case would have been different had he been successful in impeaching his supervisor's credibility. Therefore, we find that the appellant has failed to show that the administrative judge abused her discretion regarding any ruling concerning this witness. *See Parker v. Department of Veterans Affairs*, 122 M.S.P.R. 353, ¶ 21 (2015) (explaining that an administrative judge has wide discretion to control the proceedings, including the authority to exclude testimony she believes would be irrelevant, immaterial, or unduly repetitious).

¶20 For the foregoing reasons, we find that the appellant has not established any basis for review. We therefore affirm the initial decision dismissing this appeal for lack of jurisdiction.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the U.S. Code, at our website,  http://www.mspb.gov/appeals/uscode.htm.   Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at  http://www.mspb.gov/probono  for  information  regarding  pro  bono representation for Merit Systems Protection Board appellants before the Federal Circuit.                                                                                                                  The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                          _____
                                        William D. Spencer
                                        Clerk of the Board

Washington, D.C.